1
2
3
4
5
6                         UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9   INTERNATIONAL BROTHERHOOD OF        Case No. 3:09-cv-00419-MMD-WGC
    ELECTRICAL WORKERS LOCAL 697
10  PENSION FUND, individually and On                   ORDER
    Behalf of Others Similarly Situated,
11
                                Plaintiff,
12
         v.
13
    INTERNATIONAL GAME TECHNOLOGY,
14  INC., THOMAS J. MATTHEWS, PATRICK
    W. CAVANAUGH and DANIEL R.
15  SICILIANO,

16                             Defendants.

17

18

19          Before the Court is Plaintiffs' Motion for (1) Final Approval of Class Action

20  Settlement; (2) Approval of Plan of Allocation of Settlement Proceeds; and (3) Lead

21  Counsel's Application for Award of Attorneys' Fees and Expenses and Plaintiffs'

22  Expenses.  (Dkt. no. 152.)  One class member, Ian T. Kideys, timely filed an Objection

23  to Settlement Class Certification, Settlement Adequacy, and Attorney Fee Award

24  ("Objection").  (Dkt. no. 166.)  Having considered the Motion, the Objection and after

25  reviewing the records in this case, the Court grants Plaintiffs' Motion.

26  I.      BACKGROUND

27          Named Plaintiff International Brotherhood of Electrical Workers Local 697

28  Pension Fund ("IBEW") initiated this class action lawsuit against International Game

Technology ("IGT") and individual officers of IGT on July 30, 2009.[1]  The Complaint alleges violations of federal securities laws on behalf of a class consisting of purchasers of the common stock of IGT between November 1, 2007, and October 30, 2008 ("Class Period").  On March 11, 2010, the Court appointed the Iron Workers District Counsel of Western New York and Vicinity Pension Fund ("Iron Workers") as lead plaintiff ("Lead Plaintiff") and its counsel, Robbins Geller Rudman & Dowds LLP,[2] as lead counsel ("Lead Counsel").  (Dkt. no. 41, amended by dkt. no. 44.)

Plaintiffs subsequently filed a Consolidated Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, as well as control person claims under Section 20(a) of the Exchange Act, on behalf of purchasers of IGT securities during the Class Period. The gist of the claims is that Defendants made material false representations, through affirmative statements and omissions that resulted in the artificial inflation of IGT's securities during the Class Period.  Defendants moved for dismissal.  The Court concluded that Plaintiffs' allegations based on Defendants' earnings per share forecasts, server-based technology schedule forecast, operating expense forecast, and stock sales are insufficient to allege fraud under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  (Dkt. no. 61.)  However, the Court found that Plaintiffs' allegations based on Defendants' statements concerning play levels and omissions relating to the City Center and Harrah's agreements create an inference of scienter at least sufficient to survive a motion to dismiss.  (*Id.*)  The Court therefore denied Defendants' motion to dismiss.

The parties then proceeded with discovery and sought court interference on a number of discovery disputes.  Plaintiffs also filed a motion for class certification.  (Dkt. no. 84.)  Before the Court decided that motion, on March 29, 2012, the parties filed their

---

[1] The Court's Order relating to Plaintiff's motion to dismiss provides a more thorough discussion of the underlying allegations.  (Dkt. no. 61.)

[2] This firm's former name is Coughlin Stoia Geller Rudman & Robbins LLP.  (Dkt. no. 42.)

1  Stipulation of Settlement and applied for an order preliminarily approving settlement.

2  (Dkt. no. 141.)The settlement was reached after a private mediation session in

3  November 2011 and continued settlement negotiations with the assistance of the

4  private mediator.

5  On March 30, 2012, the Court entered an Order Preliminarily Approving

6  Settlement and Providing for Notice and scheduled a hearing on the final approval of

7  settlement. (Dkt. no. 143.) The Court ultimately established a deadline of September 14,

8  2012, for any objections to the settlement to be filed.  (Dkt. no. 146.)  The Objection was

9  timely filed.

10  **II.    DISCUSSION**

11  **A.    Settlement**

12  Plaintiffs request that the Court approve the Stipulation of Settlement filed on

13  March 29, 1012 ("Stipulation").  (Dkt. no. 141.)  The Stipulation memorializes the parties'

14  agreement to resolve all claims asserted in this action for a payment of $12,500,000.00

15  ("Settlement Amount").  (*Id.* at ¶ 2.1.)  Plaintiffs request certification of a settlement class

16  ("Settlement Class") defined to mean "all Persons who purchased or otherwise acquired

17  IGT publicly-traded securities during the period between November 1, 2007 and

18  October 30, 2008, inclusive, and who were allegedly damaged thereby," except for

19  Defendants and individuals/entities affiliated with Defendants and individuals who timely

20  and validly requested to be excluded. (*Id.*at¶¶ 1.25 & 3.1; dkt. no. 153.)

21  Federal Rule of Civil Procedure 23(e) provides that a class action shall not be

22  compromised without the approval of the court.  A court's review of a proposed Rule

23  23(e) settlement should be more exacting if, where as here, the settlement occurred

24  before the certification of the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

25  (9th Cir. 1998).  Notwithstanding this more exacting scrutiny, the court's review should

26  give "proper deference to the private consensual decision of the parties."  *Id.* at

27  1027.Rule 23(e) requires the Court to determine whether a proposed settlement is

28

3

"fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  Factors to be considered include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citations omitted). The Court holds that these factors weight in favor of a finding that the proposed settlement here is "fundamentally fair, adequate, and reasonable."

Plaintiffs have demonstrated that there are risks associated with continued litigation, given the factual and legal issues involved in the liability phase and the challenges in proving loss causation damages.  The action was filed in 2009 and, but for the settlement, would require additional discovery, court intervention to resolve discovery disputes, extensive briefings, and possibly a protracted, expensive and lengthy trial in order to reach resolution.  Plaintiffs would also have to obtain class certification and maintain class action status throughout the action.  While two of the claims survived dismissal, continued litigation poses the risks of dismissal at the summary judgment phase, an adverse jury verdict, or a verdict awarding less than the Settlement Amount — even assuming any claims survive summary judgment and probable appeal.  The parties also have demonstrated that establishing loss causation damages may be challenging because of the historic economic downturn that occurred during the Class Period.   The settlement was reached following arm's length negotiations between experienced counsel that involved the assistance of an experienced and reputable private mediator, retired Judge Phillips.

Moreover, Lead Counsel who proposed the settlement appear to have extensive experience in class action securities and have been immersed in prosecuting this action against experienced counsel for the Defendants for over two years.  In evaluating whether the settlement reached is fair and reasonable, "[i]t also is appropriate for the

4

court to defer to the judgment of the lawyers supporting the proposed settlement." *Nat'l Treasury Emps. Union v. United States*, 54 Fed. Cl. 791, 797 (Fed. Cl. 2002); *Luevano v. Campbell*, 93 F.R.D. 68, 88 (D.D.C.1981) (the professional judgment of lead counsel is also "entitled to considerable weight in the court's determination of the overall adequacy of the settlement.")  The Court gives considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general.

At oral argument, counsel for Plaintiffs (Brian O'Mara) represent that the Settlement Amount is about 3.5% of the maximum damages that Plaintiffs believe could be recovered at trial.[3]  This amount is within the median recovery in securities class actions settled in the last few years and not unreasonable in light of the risks, expenses, and likely duration of further litigation in this action.  *See SEC v. Cioffi*, __ F. Supp. 2d ___, 2012 WL 2304274, at *6 n.5 (E.D.N.Y. June 18, 2012) (citing to a recent article that estimated that median recovery in settled securities-fraud class actions hovered between 2% and 3% of median loss from 2002–2010, and fell to 1.3% of median loss in 2011).  Settlement here yields immediate and certain recovery for the Settlement Class Members, thereby eliminating the risks associated with continued litigation.

Finally, the reaction of the class members to the proposed settlement supports the fairness, reasonableness, and adequacy of the settlement.  As noted, only one objection was filed out of over 144,000 notices sent to Settlement Class Members and nominees.  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."  *In re Austrian and German Bank Holocaust Litig*, 80 F.Supp.2d 164, 175 (S.D.N.Y. 2000).

Moreover, the Court finds that the Objection fails to undermine the adequacy and reasonableness of the settlement.  The Objection raises two main issues:  (1) the Class

---

[3]Plaintiffs have also demonstrated why the calculation of potential damages by Mr. Kideys in the Objection is incorrect.

1    Period is too lengthy and should consist of the period between November 1, 2007, and

2    January 17, 2008[4] and (2) the class representatives and Lead Counsel are inadequate.[5]

3    However, the Court has also considered and resolved these two issues during the

4    course of this litigation.  First, the Consolidated Complaint identified the Class Period

5    and the Court found that the facts as alleged support the Class Period.  The Court

6    further preliminarily certified the Settlement Class to consist of all purchasers of IGT

7    publicly traded securities during the Class Period.  (Dkt. no. 143, ¶ 3.)  Second, in the

8    Amended Order appointing Iron Workers as the lead plaintiff and Iron Workers' selected

9    counsel as lead counsel, the Court found that Iron Workers "is typical of the class

10   members" and " would fairly and adequately protect the interests of the class."  (Dkt. no.

11   44.)  The Court also preliminarily found that the commonality and typicality requirements

12   have been satisfied.  (Dkt. no. 143, ¶ 4.) The Objection fails to offer evidence to cause

13   the Court to question its earlier findings.

14        In sum, the Court finds that the Motion for final approval of settlement should be

15   granted.

16        **B.    Attorneys' Fees and Costs**

17        Plaintiffs request that the Court approve attorneys' fees in the amount of 25% of

18   the Settlement Fund, costs of $196,134.16, and costs of $5,832.85 for Lead Plaintiff and

19   $4,050.00 for named plaintiff IBEW.  Each request is addressed in turn below.

20             1.    Attorneys' Fees

21        The common fund doctrine permits sharing of the burden of the litigation

22   expenses among those who are benefited by the litigation.  *Paul, Johnson, Alston &*

23   *Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  The Ninth Circuit approved both a

24   "percentage of the funds" method and the "lodestar method," but found that under some

25   circumstances the percentage method is preferable because it is simpler to calculate.

26        ────────────────

27        [4]The Objection also contends that the Settlement Class is too broad and fails to
     meet the commonality element.

28        [5]The Objection argues that the claims of the class representative, an institutional
     investor, are not typical of the class.

*Id.* at 272.    The Ninth Circuit found that under the percentage method, fee awards ordinarily range from twenty to thirty percent of the fund created.  *Id.*  Twenty-five percent should be the "bench mark" percentage, but the district court may adjust upward or downward to account for the circumstances in each case.  *Id.*  In *In re Activision Securities Litigation*, the district court concluded that the "better practice" would be to use the percentage method and that the benchmark should be thirty percent rather than the twenty-five percent recommended in *Paul, Johnson*.  *In re Activision Sec. Litig.*, 723 F.Supp.1373, 1377-79 (N.D. Cal. 1989). The *Activision* court found that a review of several reported cases disclosed that "nearly all common fund awards range around 30% even after through application of either the lodestar or twelve-factor method."  *Id.* at 1377.

In this case, twenty five percent of the Settlement Amount does not seem an extraordinary or extravagant fee for counsel.  Plaintiffs' counsel has litigated this case for more than two years without recompense until now, and has achieved a favorable settlement.  Plaintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis.  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *In re Washington Pub.Power Supply Sys.Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (citation omitted).

The twenty five percent fee is also reasonable when compared with the result under the lodestar method.  The lodestar method calculates the fee by "multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation."  *Paul, Johnson*, 886 F.2d at 272.  The lodestar method result may be compared with a fee request made under the percentage method as a "cross-check" on the reasonableness of the requested fee.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).  Plaintiffs' counsel spent over about 3,250 hours of professional time on this case to

date, yielding a lodestar amount of $1,547,267.50.  (Leahy Dec. at ¶ 5, dkt no. 158; O'Mara Dec. at ¶ 5, dkt no. 159.)  The lodestar method result is less than the requested twenty five percent fee, which amounts to approximately $3,125,000.00.  However, the requested fee represents a multiplier of approximately 2.02, which is not unreasonable. *See Vizcaino*, 290 F.3d at 1052-54 (approving a 28% fee that resulted in a 3.65 multiplier and finding that multipliers generally ranged between 1.0 to 4.0). The Court concludes, therefore, that the requested twenty five percent fee is not unreasonable.

### 2.   Attorneys' Expenses

Plaintiffs also request reimbursement of expenses in the amount of $196,134.16 from the Settlement Fund following payment of attorneys' expenses.  A survey of the itemized expenses show nothing out of the ordinary: expenses include fees for investigators, depositions, access to computer databases for research, travel, copying and filing.  The expenses are therefore approved.

### 3.   Plaintiff's Expenses

Plaintiffs request reimbursement of expense of $5,832.85 incurred by Lead Plaintiff and $4,050.00 incurred by Named Plaintiff.  These expenses are for time devoted to reviewing briefs, participating in depositions, answering discovery responses and consulting with counsel, and are expenses directly related to Lead Plaintiff and Named Plaintiff's representation of the Class.  These expenses are therefore approved.

## III.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiffs' Motion for (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation of Settlement Proceeds; and (3) Lead Counsel's Application for Award of Attorneys' Fees and Expenses and Plaintiffs' Expenses (dkt. no. 152.) is GRANTED.

DATED THIS 19th day of October 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE